**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| JACOB S. ADAMS, JR., | ) | |
| | ) | |
| Petitioner, | ) | Hon. Garrett E. Brown, Jr. |
| | ) | |
| v. | ) | Civil Action No. 09-6152 (GEB) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Respondent. | ) | |

_____

**BROWN, Chief Judge:**

　　This matter comes before the Court upon the petition for relief pursuant to 28 U.S.C. § 2255 filed by Petitioner Jacob S. Adams, Jr. (hereinafter "Petitioner").  (Doc. No. 12). Respondent the United States of America (hereinafter the "Government") has answered Petitioner's petition, and argues that it should be denied.  (Doc. No. 14).  The Court has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78.  Having done so, Petitioner's petition will be denied for the reasons that follow.

**I.　　BACKGROUND**

　　On November 27, 2002, Petitioner was convicted of three counts of bank robbery in violation of 18 U.S.C. § 2113, and three counts of using a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c).  (Government's Answer ¶ 4, hereafter "Answer").  The robberies occurred in 1995 and 1996.  (Petitioner's Amended Petition P. 1, hereafter "Amend. Pet.").  On April 7, 2003, the Court sentenced Petitioner to 610 months incarceration.  (Answer ¶ 3).  On April 24, 2003, Petitioner filed Notice of Appeal and on July

10, 2006, the Third Circuit affirmed his conviction but remanded the case to this Court for re-sentencing in light of *United States v. Booker*, 543 U.S. 220 (2005).  (Amend. Pet. P. 2).  On June 29, the Court re-sentenced Adams to 610 months.  (Answer ¶ 3).  Petitioner again appealed his sentence, which the Third Circuit affirmed on September 8, 2008.  (Answer ¶ 9).  On December 4, 2009, Petitioner filed his initial petition pursuant to § 2255.  (Amend. Pet. P. 2).  Subsequently, Petitioner retained counsel and filed an amended § 2255 petition on September 3, 2010.  (Docket #12).  The Government replied with its Answer on December 6, 2010, to which Petitioner responded on December 21, 2010.  (Docket #14 and #15).

In his present petition, Petitioner requests that this Court vacate, set aside or correct his sentence pursuant to § 2255 because he contends: (1) that the Court's admission of DNA evidence at trial constituted a violation of his constitutional rights pursuant to the Confrontation Clause; and (2) that his defense counsel provided him ineffective assistance.  (Amend. Pet. P. 5-20).  The Government has moved to dismiss Petitioner's petition on the grounds that Petitioner has failed to satisfy the burden of proof required to support both claims and obtain relief pursuant to § 2255.  (Answer ¶ 35).  Specifically, the Government asserts that Petitioner's first claim is substantively without merit because *Melendez-Diaz v. Massachusetts*, the recent Supreme Court decision upon which Petitioner primarily relies, does not apply retroactively.  *Melendez-Diaz v. Massachusetts*, 557 U.S. __, 129 S.Ct. 2527 (2009).  In the alternative, the Government argues that the admission of DNA evidence at trial in this case complied with *Melendez-Diaz*.  Finally, the Government argues that Petitioner's second claim fails because Petitioner does not establish that counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).

Having reviewed the parties' various submissions, the Court agrees with the Government

2

and will deny Petitioner's petition for the following reasons.

## II.   DISCUSSION

### A. Standard of Review For 28 U.S.C. § 2255

28 U.S.C. § 2255 permits a court to vacate, correct or set aside a sentence that was "imposed in violation of the constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to a collateral attack." 28 U.S.C. § 2255. Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). However, the Court of Appeals has expressed a strong preference that an ineffective assistance of counsel claim be brought before the district court in the first instance in a motion under 28 U.S.C. § 2255. *See DeRewal*, 10 F.3d at 103 (citing *United States v. Rieger*, 942 F.2d 230, 235 (3d Cir. 1991)). Since it is appropriate to raise a claim of ineffective assistance of counsel under § 2255, rather than on direct appeal, "the failure to raise such a claim on direct appeal should not be treated as a procedural fault." *Id*. This Court must accept the truth of the petitioner's factual allegations unless they are clearly frivolous based on the existing record. *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).

### B. Application

#### 1. Petitioner's Confrontation Clause Argument

As noted, Petitioner seeks relief pursuant to § 2255 under two separate theories. First, Petitioner argues that his Sixth Amendment rights under the Confrontation Clause were violated at trial when the Court admitted the results of certain DNA tests via expert testimony, absent

testimony by the lab technician who prepared the DNA samples.  (Amend. Pet. P. 5)  Petitioner

claims that *Melendez-Diaz v. Massachussets*, 557 U.S. __, 129 S.Ct. 2527 (2009), the Supreme

Court's recent decision that addresses testimonial statements under the Confrontation Clause, is

the controlling law in this case, and its application in this case militates relief under § 2255.

(Amend. Pet. P. 14).  The Court disagrees.

When reviewing a *habeas* claim pursuant to § 2255, the Court applies the "clearly

established federal law" at the time when a petitioner's conviction becomes final.  *Williams v.*

*Taylor*, 529 U.S. 362 (2000).  At the time of Petitioner's conviction, November 27, 2002, *Ohio v.*

*Roberts* controlled whether admission of a hearsay statement against a criminal defendant

violated the Confrontation Clause.  *Ohio v. Roberts*, 448 U.S. 56 (1980).  Before Petitioner's

conviction became final, however, the Supreme Court overruled *Roberts* with its decision in

*Crawford v. Washington*, 541 U.S. 36, 38, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  In

*Crawford*, the Court held a witness' testimony inadmissible if the witness does not appear at

trial, "unless he was unavailable to testify, and the defendant had a prior opportunity for cross-

examination." *Crawford*, 541 U.S. at 54.  Thereafter, applying *Crawford*, the Third Circuit

denied Petitioner's Sixth Amendment claim on direct appeal, finding that "appellants were not

denied their constitutional right to confrontation when the District Court permitted the

government's expert witness to testify." *U.S. v. Adams*, 189 Fed.Appx. 120, 124 (3d Cir. 2006);

*see also Crawford*, 541 U.S. 36.  Ultimately, Petitioner's conviction became final on September

9, 2008, before the *Melendez-Diaz* decision in June of 2009.  *Melendez-Diaz*, 557 U.S. __, 129

S.Ct. 2527 (2009).

Although the Third Circuit has yet to address the retroactivity of *Melendez-Diaz*,

4

persuasive precedent from district courts in both E.D.N.Y. and W.D.Pa declined to apply the case retroactively.  *See Vega v. Walsh*, 2010 WL 2265043 (W.D.Pa); *see also Frankenberry v. Coleman*, 2009 WL 3734140 (E.D.N.Y).  Furthermore, *Crawford* is not retroactive, and where the Court stated that *Melendez-Diaz* was essentially an application of *Crawford*, there is nothing to suggest that *Melendez-Diaz* should be applied differently.  *See Whorton v. Bockting*, 549 U.S. 406, 421, 127 S.Ct. 1173, 1184 (2007) (holding that its *Crawford* decision did not announce a "watershed rule" of criminal procedure such as could be applied retroactively on collateral review); *see also Melendez-Diaz*, 557 U.S. __ (explaining that the facts required "little more than the application of our holding in *Crawford*").  Therefore, this Court finds that *Crawford* controls and that *Melendez-Diaz* does not apply retroactively to Petitioner's case.[1]

Further, even if this Court considers the merits of Petitioner's claim under *Melendez-Diaz*, that claim fails.[2]  At issue in *Melendez-Diaz* were "certificates of analysis," or sworn

---

[1]  For the sake of thoroughness, the Court simply notes Petitioner's convoluted argument that *if* he had filed for certiorari in 2008, which he did not, then *Melendez-Diaz could have* been applied to his case, *if* his writ had not been denied by the United States Supreme Court before it decided *Melendez-Diaz* in June 2009.  Among the myriad problems with this argument is the obviously fatal flaw that Petitioner, for whatever reason, did not pursue direct appeal after the Third Circuit took its final action in this case in September, 2008.  As such, Petitioner's foregoing purely hypothetical argument is both irrelevant and moot.  Therefore, the Court reinforces that *Melendez-Diaz* does not apply to Petitioner's case for the reasons established above.

[2]  Although the Third Circuit has not yet addressed whether a Confrontation Clause issue arises where a government expert witness relies on information prepared by a lab analyst who did not testify, every Circuit that has applied *Crawford* to a similar set of facts has held that there is no Sixth Amendment violation.  *See United States v. Washington*, 498 F.3d 225 (4th Cir. 2007)(holding that because the expert's testimony was based on his independent conclusions and not the non-testimonial "raw data" from lab technicians, there was no violation of the Confrontation Clause); *accord United States v. Moon*, 512 F.2d 359, 362 (7th Cir. 2008) (holding that "the Confrontation Clause does not forbid the use of raw data"); *United States v. Turner*, 591 F.3d 928, 930 (7th Cir. 2010) (finding that the Confrontation Clause is not offended when an

5

affidavits admitted into evidence in lieu of live testimony, which the Court held to be "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Melendez-Diaz*, 129 S.Ct. at 2532 (internal citations omitted).  The Court held that the affidavits were testimonial under the Sixth Amendment because they were sworn declarations of fact made for the sole purpose of proving a fact at trial.  *Id*.  Accordingly, the analysts who prepared the affidavits were witnesses subject to confrontation by the defendant. *Id*. at 2532, 2542.

In this case, at Petitioner's trial, the Court allowed a lab supervisor to testify to his expert opinion, which was based on his independent review of the DNA tests and notes from the lab technicians.  (Answer ¶¶ 56, 57).  The lab technicians were not called as witnesses, and their reports, notes, and the other information they prepared were not submitted as sworn declarations of fact and were not used to prove a fact at trial.  (*Id.*).  See *United States v. Moon*, 512 F.2d at 362 (7th Cir. 2008) (finding no violation of the Confrontation Clause where a testifying expert relied on output from machines, a report by the lab technician who performed the tests, and the lab notes by the technician who performed the tests).  Here, the purpose of the lab technicians' work was to generate test results, from which the expert could draw independent conclusions as to the likelihood that the DNA on the mask matched Petitioner's DNA.  *See United States v. Turner*, 591 F.3d 928, 930 (7th Cir. 2010) (finding that the expert witness could opine based on lab technician's reports, notes, and machine-generated data without offending the Confrontation Clause).

At trial, the Court allowed into evidence those conclusions, not the raw technical data

---

expert relies on reports by lab technicians).

from the lab tests.  (Answer ¶¶ 56, 57).  The "raw data" is non-testimonial and therefore does not trigger Sixth Amendment protection.  *See United States v. Washington*, 498 F.3d 225, 230 (4th Cir. 2007) (finding no Confrontation Clause violation where a lab director testified at trial that the defendant's blood contained alcohol and PCP, basing his conclusions on tests performed by lab employees, because the expert's testimony "did not come from out-of-court technicians," and instead was based on his independent review of the results).

Consequently, there is no Confrontation Clause violation in the instant case because Petitioner had the opportunity to, and did, cross-examine the expert Thomas Callaghan regarding his testimonial statements.  (Def.'s Answer ¶¶ 56, 57); *see United States v. Johnson*, 587 F.3d 625 (4th Cir. 2009) (holding that "[a]s long as [the expert] is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no *Crawford* problem [because] [t]he expert's opinion will be an original product that can be tested through cross-examination."); *compare Melendez-Diaz*, 129 S.Ct. at 2527 (determining the Confrontation Clause was violated where a defendant had no opportunity to cross-examine the statements made in sworn affidavits because the affidavits were introduced to replace the testimony of an in-court expert).

Thus, Petitioner fails to demonstrate how the admission of the expert's testimony constitutes error because Thomas Callaghan's testimony was his expert opinion, informed by his independent review of non-testimonial results produced by lab technicians.  (Answer ¶¶ 56, 57).  Thomas Callaghan was subject to cross-examination with regard to his conclusions, and the jury was free to accept or reject his findings.  *Id.*  Thus, Petitioner's rights under the Confrontation Clause were not offended at trial, and Petitioner's arguments for relief on that basis fail.

## 2.  Petitioner's Ineffectiveness of Counsel Argument

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court defined a two-prong test to establish ineffective assistance of counsel.  The first prong of the test requires that a petitioner show that her counsel's performance was deficient.  *Strickland*, 466 U.S. at 687.  Specifically, in order to succeed on the deficiency prong, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Id.*  This requires that the Court examine the entire proceedings and determine "whether, in light of all the circumstances, the [conduct of a petitioner's trial counsel was] outside the wide range of professionally competent assistance."  *Id.* at 690.  Accordingly, this Court's inquiry is highly deferential.  *Id.* at 689.  The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [a petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Once the deficiency prong is established, a petitioner must then show that as a result of the deficient performance, he was ultimately prejudiced.  *Strickland*, 466 U.S. at 687.  This prong of the test requires that a petitioner show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in that outcome.  *Id.* at 699.  Thus, a petitioner must show "that counsel's errors were so serious as to deprive [a petitioner] of a fair [hearing] . . . whose result is reliable."  *Lockhart I,* 506 U.S. at 369 (internal quotes and citation omitted).  The focus is on whether the result of the proceeding is

8

fundamentally unfair or unreliable.  *Id*.

A claim for ineffectiveness of counsel will not succeed unless a petitioner satisfies both prongs of the *Strickland* test.  Therefore, once a court determines that one part of the test has not been met, the petitioner's ineffectiveness claim fails, and the court need proceed no further with the analysis.  *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order [as the *Strickland* court] or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  The Third Circuit's interpretation of *Strickland* requires courts to consider first whether a petitioner has suffered prejudice.  *United States v. Fulford*, 825 F.2d 3, 8 (3d Cir. 1987).

In the present case, Petitioner's ineffectiveness claims rest on the failure of his trial counsel to: (1) question him on direct examination with regard to his recognition of the mask used in the robberies; (2) interview and call witnesses who would have provided testimony about the alleged Jamaican accent of one of the bank robbers; and (3) maintain Petitioner's trial file until the expiration of the period in which Petition can file for *habeas corpus* relief.  (Amend. Pet. P. 11-20); (Answer ¶¶ 64-69).  For the reasons discussed herein, Petitioner's ineffective assistance claim is without merit.

Petitioner argues that he suffered prejudice from counsel's failure to elicit his testimony regarding the mask used during the course of the robberies.  (Amend. Pet. P. 11-14). Specifically, Petitioner argues that counsel should have asked him on direct examination to explain how he recognized the mask, because Petitioner wished to testify that he wore the mask

9

at work.  *Id.*  However, the record shows that this issue was presented to the jury during closing argument.  (See Amended Petition P. 12).  Accordingly, the jury was aware of the issue, and there is no evidence that counsel's representation was anything less than adequate for failing to raise this line of questioning during direct examination.  Moreover, even if trial counsel failed to frame the argument in the way Petitioner would have preferred, "[f]ailure to raise a meritless argument is not grounds for finding ineffective assistance of counsel."  *Atta v. U.S.*, 2005 WL 1607016 (citing *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996).  Therefore, petitioner failed to demonstrate under *Strickland* that counsel's assistance was objectively unreasonable or that Petitioner was prejudiced due to counsel's decisions.

By the same analysis, Petitioner's second claim fails the *Strickland* test.  Petitioner asserts that counsel was deficient in his failure to interview and call witnesses to testify to the fact that one of the robbers "may have had a Jamaican accent."  (Amend. Pet. P. 14-17).  Petitioner presents no evidence to support his contention that counsel was ineffective for failing to raise this argument.  The bank teller who made the statement testified at trial, and was cross-examined by Petitioner's counsel.  (Amend. Pet. P. 14-15); (Answer ¶66).  Petitioner has not alleged, described, or proven that other potential witnesses possessed information that would have altered the course of the proceedings.  Because the jury heard and considered the testimony about the Jamaican accent absent any additional witnesses, the attorney's decision not to offer duplicate testimony was reasonable and did not prejudice Petitioner.  Petitioner has therefore failed to carry his *Strickland* burden.

Petitioner's third ineffectiveness claim arises from counsel's alleged failure to retain Petitioner's trial file in its entirety.  (Amend. Pet. P. 17-20).  The ABA Model Rules provide

10

standards for retention and preservation of client files.  ABA Model Rules of Prof. Conduct, rule 1.16(d).  Model Rule 1.16(d) states in relevant part, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . ."  *Id*.  In New Jersey, attorneys shall keep files for a period of seven years after the date of the event that they record; the date on which the representation concludes is not a basis for measurement.  New Jersey Rules of Prof. Conduct, rule 1.15(a).  In the present case, the trial file documented criminal events that occurred in 1995 and 1996.  (Amend. Pet. P. 1).  Petitioner was represented by trial counsel at his conviction in November 2002 and at his sentencing in June 2003, seven years after the last criminal event recorded.  *Id*.  There is no evidence to show that Petitioner's counsel fell below the standard for competent assistance.  To the contrary, the record shows that trial counsel complied with professional standards and turned over the portion of the trial file that was sufficient to assist appellate counsel in prosecuting Petitioner's appeals.  (Answer ¶ 68).  Moreover, Petitioner has not identified any prejudice he suffered as a result of counsel's decision to dispose of portions of the file in the normal course of business.  *Id*.  There is no reasonable probability that Petitioner suffered prejudice by counsel's decision because the documents made available to appellate counsel were adequate for the prosecution of several appeals.  (Amend. Pet. P. 19); (Answer ¶ 68).  Petitioner has not identified any dispositive evidence or information that was destroyed and therefore compromised his appeal process.  Thus, counsel's failure to preserve the entire file for more than seven years after the event recorded, after transferring relevant documents to appellate counsel, was neither deficient nor prejudicial.

Therefore, for all of the reasons discussed above, Petitioner's § 2255 petition will be

denied.

### 3. Certificate of Appealability

After ruling on a § 2255 petition, the Court must decide whether to grant a certificate of appealability to the Third Circuit. *See Blasi v. Attorney General of the Commonwealth of Pennsylvania*, 120 F. Supp.2d 451, 478 (M.D. Pa. 2000); *Harabou v. Albright*, 82 F. Supp.2d 347, 353 (D.N.J. 2000); *Sepulveda v. United States*, 69 F. Supp.2d 633, 642 (D.N.J. 1999). As a result of the Antiterrorism and Effective Death Penalty Act of 1996, a petitioner under § 2255 may not appeal as of right from an adverse decision. Instead, the petitioner must first obtain a certificate of appealability. District judges, as well as circuit judges, are authorized to issue certificates of appealability. *See United States v. Eyer*, 113 F.3d 470, 472-73 (3d Cir. 1997).

To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Barefoot v. Estelle*, 463 U.S. 880, 892 (1983), the Supreme Court ruled that a petitioner could obtain a certificate of probable cause under the unamended version of § 2253 by demonstrating the denial of a "federal right." Although it is presently undecided in the Third Circuit whether the denial of a "federal right" is the equivalent of the denial of a "constitutional right," *see, e.g., Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996), the Supreme Court has applied the *Estelle* standard in determining whether a petitioner is entitled to a certificate of appealability. *See Slack v. McDaniel*, 120 S. Ct. 1595, 1603-04 (2000) (holding that "[e]xcept for substituting the word "constitutional" for the word "federal," § 2253 is a codification of the CPC [certificate of probable cause] standard announced in *Barefoot v. Estelle*, 463 U.S. at 894."); *see also Story v. Kindt*, 970 F. Supp. 435, 464-65 (W.D. Pa. 1997); *Burke v. United States*, Civ. A. No. 96-3249, 1996 WL 711270 at *3

(E.D. Pa. Dec. 5, 1996).  The *Estelle* court explained that:

> In requiring a . . . 'substantial showing of [a] federal right,'
> obviously the petitioner need not show that he should prevail on
> the merits.  He has already failed in that endeavor.  Rather, he must
> demonstrate that the issues are debatable among jurists of reason;
> that a court could resolve the issues [in a different manner]; or that
> the questions are 'adequate to deserve encouragement to proceed
> further.'

463 U.S. at 893 n.4.  Therefore, to obtain a certificate of appealability, a petitioner must

demonstrate that the issues raised are debatable among jurists of reason, and that another court

could resolve the issues presented in a contrary manner.  *See id.*

For the reasons discussed in this opinion, the Court concludes that the issues raised by

Petitioner are not debatable among jurists of reason and that the claims are not deserving of

further encouragement.  Petitioner has not made a substantial showing of the denial of either a

constitutional or so-called "federal" right.  Accordingly, no certificate of appealability under 28

U.S.C. § 2253(c) will issue in this case.

After reviewing the parties' submissions, which included a supplemental reply by

Petitioner, this Court concludes that the parties' submissions and the record show conclusively

that Petitioner is not entitled to relief for the reasons stated above.

## III.    CONCLUSION

For the foregoing reasons, Petitioner's petition to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255 will be denied, and a certificate of appealability will not issue.

(Doc. No. 12) In light of that decision, the Court will order the Clerk of the Court to CLOSE this

case.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: May 10, 2011

/s/ Garrett E. Brown, Jr.
_____
GARRETT E. BROWN, JR., U.S.D.J.

14